The next case is Township of Lynnhurst v. Priceline.com et al. Number 09-2053. Mr. Cecci? Cecci, Your Honor. Cecci. Thank you. And Mr. Rossman. Good morning, Your Honor. Whenever you're ready. Thank you, Judge. Judge, I told the court's clerk that I would like to reserve, respectfully, five minutes for rebuttal. That's fine. Thank you, Judge. I want you to announce your name. I'm sorry. Sure. James Cecci on behalf of the Township of Lynnhurst. Good morning, Your Honors. At the outset, there's an old Miller Lite commercial beginning with a former Mets player by the name of Marv Throneberry. Sure.  Marvelous Marv. And he goes, I don't know why I'm in this commercial. And I keep looking at this case saying, I don't know why we're in this case. I mean, this seems like a state law matter. It should be resolved in a state law basis. State authorities have weighed in. States' courts could weigh in. Why are you before us? Judge, I think it's a very apt question. The cases involving the online travel companies and municipal occupancy taxes, there's approximately 30 of them all over the country. I'm presently preparing for trial July 19th before the Honorable Judge Moore in the Southern District of Florida on behalf of the County of Monroe. This is the only case that I'm aware of where the standing argument that was advanced by the OTCs was adopted. In the Monroe County case, Judge Moore, they made the same motion, concluded Monroe County obviously is the recipient and ultimate beneficiary of the taxes has standing. Why we're in federal court? Because it's a class case on behalf of all the municipalities in the state of New Jersey. But ultimately, Your Honor, it is correct. It does turn on state law. And I would respectfully submit to Your Honor there are three principles which clearly, in my judgment, demonstrate that our friend Judge Linares just got it wrong in this case. This is an unequivocal state enabling act which the Lynnhurst Township adopted verbatim, which makes these defendants liable to my client personally for these taxes. They are personally liable under the statute to pay these taxes to my client. They have an absolute statutory obligation to collect them from the customer at the time of the booking of the rental. How do you reconcile the enabling act and the dichotomy between E3 and F1? Excuse me, Your Honor? How do you explain the dichotomy between E3 and F1? The enforce in one and the absence of it in the other? Again, and Judge Linares spoke to that. I think what you're talking about is the first class cities provision. I think that that clearly illustrates why my client on behalf of the other municipalities in the State are allowed to bring this action. It's very interesting when you drill down into the first class statute. There are two first class cities in the State of New Jersey, Newark and Jersey City. That statute was passed in, I believe, 1981. And what it says is that the first class cities can collect either the higher of the real property taxes or the municipal occupancy tax. And it gave those first class cities the right, Judge, to impose a much higher occupancy tax. I think it's 7%. So what the first class cities have is they can either get real estate taxes or the higher municipal occupancy tax. And what it says in the statute, it limits. It's a limitation, Judge, not a — not something greater, as Judge Linares interpreted it, because what it says is, okay, first class city, you can do that. You can get that higher occupancy tax. But the only way you can collect it from the tax scoff law is a foreclosure proceeding, and that's a lesser right than the common law right or the statutory right that my client has to sue these guys personally. I don't have to foreclose. The first class cities have to foreclose because that's a limitation. When you look in the first class city statute, the legislature said, I'm going to give you the higher rate and you can get the most money, but you could only foreclose. And that's a more arduous proceeding than my client has to go through. But whether it's arduous or not, I mean, the enforced language is present in the one and not present in the other. So from what does this power to tax emanate from? Three answers, Judge. First, the authority to enact the ordinance comes from the Enabling Act. The Enabling Act itself says nothing about abrogating the municipality's powers to sue to collect the debt, and there's two sources of those powers. And respectfully, Judge Linares, he misinterpreted the one, and I'll read it to Your Honor. It's 40-48-1. It's clear. It's unequivocal. It says a municipality may make, amend, repeal, and enforce ordinances to manage, regulate, and control the finances and property of the municipality. The law is clear that in order to abrogate this general power, and Judge Linares interpreted it as a police power, that was incorrect. 48-2 is the police power. This is the general power of municipality to enforce its ordinances. And Judge, when I was thinking this morning about really the essence of what I want to impress upon Your Honors this morning, and it's perhaps not the fairness principles you were talking about before, but it really does get down to fairness and practical realities and common sense, because although we're sitting here in this wonderful courtroom in the Third Circuit, we've got to look at the common sense application of what has occurred here. If Judge Linares's decision is correct, he has overridden the Lindhurst Ordinance and immunized these defendants from taxes in a time when these municipalities need taxes, because the practical reality is, Judge, these taxes are not due the State. The State Director will never in our lifetimes incur the effort and resources to go after these defendants in a contested proceeding. But that's, is that our, I mean, that may be, that may be the practical fact, but isn't that a legislative issue, not a judicial one? I don't think so, Judge, because the following is. You've got to look to what the powers the municipality has. 40-48-1 says I can enforce an ordinance. What you're, what, if Judge Linares is correct, it says you can pass a tax statute, but as we said in our brief, you can just send a nasty letter to these guys, say, you know, you're delinquent, please pay your taxes. That's the legislature that came up with this language. They chose to include enforce in one and not to include enforce in the other. But, Judge, what they didn't do as to the second-class cities is say you don't have your common law power. And I would submit to Your Honors, if Hague is good law, and it quotes the New Jersey Constitution, Chief Judge Vanderbilt, an esteemed judge from the New Jersey Supreme Court's history, if that's good law, Judge, my client has the power to collect the debt. And this isn't too far from Hague. Remember what Hague says is that Frank Hague was stealing from Jersey City, right? There was no statute. And they said he owes us this money. It's unjust enrichment. He took it from us. We have an unjust enrichment plan. This is very different. This is where Mayor Hague was taking money that they're entitled to get back. This is a case where the statute says for certain cities the director collects it. The director here has determined that it isn't operable for this particular type of situation and, therefore, is not going to go after people. And if they don't pay, turn it over to the attorney general. Why? In effect, you're asking us to overrule the director. No. No. And that goes to the letter that the defendant cited. Judge, there is no way, in my judgment, respectfully, that an ex parte letter that misstates the facts to a tax specialist in the department can have the force of law and override the legislature and the legislature. What we do know is that the director hasn't come forward and tried to collect your interpretation of how these occupancy tax should play out and be collected because you wouldn't be here otherwise. And he never will because he has no financial interest in it. And what you also have to look at, Judge, and I ask you, and I know you will do this, my client has to be a party to any proceeding to collect these taxes. But it seems a somewhat odd result that I'm owed the money. It's a personal debt from the OTCs to my client, but I have no power other than to be a party in a proceeding brought by someone else who will never get any of this money. Remember, it's the state sales tax and the state occupancy tax that the director, the state, keeps. Nothing. If you look at the legislative history here, this all goes to general municipal purposes. Actually, let's pick up on that because maybe it's not prudential standing. Maybe it's actually capacity to sue under Rule 17. If you have to have, according to Wright and Miller, capacity is conceived to be a party's personal right to litigate. And if under state law you're being told that you don't have that personal right to litigate, the personal right, that right is the right of the director, what gives you the capacity to say that we should overrule that determination? I don't think it's an overruling. Just to go contrary, you said the director is never going to do anything because he doesn't really have any skin in the game. He doesn't. But the director has made a decision. No. What then says that a federal court should say, nope, they do have a right to collect it or enforce it, assess it, and then enforce it, I guess. And when the statute just really talks about assessing it and the director has said, don't think this is the kind of transaction, this kind of method is a way to which the occupancy tax statute applies. You'd have to give the force of almost administrative rulemaking to that letter. And it's in our reply brief. Forget the letter. Okay. The director here is purely, in this instance, a pass-through. We made that point. All he does is collect it and administer it because it's one tax return. The municipality has the authority under 40-48-1 and I would submit state law and the New Jersey State Constitution to sue to collect a debt, which is owed by these OTCs. And I don't think Judge Linares concluded somehow that's going to interfere with the director's collection and administration. It will not. This is a contested liability, Judge. It's contested here. It's contested in Monroe. What efforts, if any, are there to have a New Jersey court rule on your argument? We filed in federal court. I mean, I would be happy and I thought about this. I'm just saying, what efforts, if any, have there been to have a New Jersey state court rule on your argument? To my knowledge, none. To my knowledge, none. But I thought about this. Had we pled it and made the director a nominal defendant, would the result have been different? We have to be the party to any lawsuit about these taxes. If I had named or sort of in a derivative capacity, and that's the final point I want to make, Judge, on my presentation, is we didn't brief it, but they made an argument under Amato v. Wilentz that I'm asserting the director's rights. I'm really not. But I looked at Amato this morning. If it's a question of third party standing and maybe that's where you're going, I think we have third party standing here. The director's not. No, I'm talking about capacity to sue. Okay. Thank you, Judge. Counsel, just one more thing. You mentioned there's a bunch of these class actions going on across the country. All of them are in federal court? No. Monroe's in federal court. There was an administrative proceeding in the city of Anaheim. The San Antonio case, I believe, was federal court, but my learned colleague will correct me if I'm wrong. Are all the parties the municipalities? Municipalities, counties. Are there any with people who paid the tax, individuals who paid the tax? There was a consumer class action in Seattle, which was settled. Okay. Thank you, Judge. Do any of those suits present the same dichotomy as here, enforced language and the absence of that language? The statutes, as Your Honor would imagine, are all using different language. But I can tell you, because I'm in the Monroe County case, they made the same exact argument in Monroe County, Judge Moore, and I could get that decision. So the Florida State Legislature presented the same dichotomy in the language? Not exactly, but they made the argument that the county didn't have standing. Judge Moore said, no, it's the county's money. They obviously have standing to bring a Rule 23 action on behalf. And we're going to trial July 19th in that case. So the cases I'm aware have been in federal court. Thank you, Judge. Thank you. Mr. Rossman. Thank you. May it please the Court. I'm Jeffrey A. Rossman, and I represent some of the appellees in this case, and I'll be arguing on behalf of all the appellees. Can I ask you a question right out of the box? Sure. We all understand the issues. What kind of standing are we really talking about here? There's constitutional standing, prudential standing. Is this statutory standing, standing under the statute? Is this something different? Well, I think it's prudential standing. But it's really educated by what the state legislature did. And so the legislature tells us who has the right to bring this action. And that clearly is answered that it's the Director of Taxation that has the standing right. Shouldn't it be standing under a statute then? I mean, we do have cases like that where, you know, certain statutes give standing. Well, I think it's the prudential standing concept, and it's who has the legal right, legal interest to bring this claim, which is what prudential standing talks about. And then you look at what the legislative, the Enabling Act scheme has done in this case, and the answer is very clear, that the person who has the right to enforce, collect, and administer, which I think is an important concept in this case, the tax. And what I mean by administer is the Director has the right, and the legislature has clearly given him a right, to determine what the tax should be on. And that's what's at dispute in this case. That's what's at dispute in all these cases. Your adversary brings up the point that, well, the statute requires that they be included. Shouldn't they have a say in this? I think that's a misinterpretation of the statute. The provision that he's citing deals with, there's two different collection schemes in the ordinance, and the district court pointed this out. One is collecting it from the consumer, the person who actually owes the tax liability. And where the city needs to be joined is in a situation where the person who's responsible for collecting the tax, which we contest in this case, it's not us, but the actual hotels, would then join the city of Lyndhurst in an action to collect that amount from the consumer. That's what that provision deals with. I think in an action by the Director to collect the tax from, if the Director thought it was the online travel companies, we think it should be the hotels, but if there was a hotel that failed to pay the tax, and the Director was going to sue one of those hotels to collect the tax, I don't think the statutory scheme requires the city of Lyndhurst be joined in that. That's just solely a consumer action, which is not at issue in this case. So your argument is, as is that of the district court, that there is a lack of prudential standing? That's correct. It doesn't ring right, because the judge said that Lyndhurst was seeking to assert a third party's legal interest. But this case involves the collection of allegedly unpaid occupancy taxes due to Lyndhurst. That's correct. So it's not really suing for necessarily a third party's right, other than it's got a class action here, but it's involved. It stands to win or lose based on its argument that it is entitled to assess and have someone collect taxes that are not being currently collected. Well, I think we have to look at who the legislature gave that ability to and the legal interest to bring that claim. That answer is clearly the Director of Taxation. And I haven't analyzed the issue. Is that a standing issue, or is that a capacity issue? Well, you raised that, and I actually hadn't thought about that before. You raised it during the city's presentation, but I think that would be both. I think the capacity to sue, the answer that the legislature has clearly answered is the person, proper party, to bring this claim is the Director of Taxation. And I want to get back to the administration of the tax. But the point is, so what is your argument on standing that? Lyndhurst says taxes are due to it, Lyndhurst. And the judge says, no, they're really bringing up third party claims. Are they the claims of third parties if they chose to make them? And I assume that that means the Director. Right. The Director is the person who the legislature gave the authority to bring in action to enforce Lyndhurst's ordinance. While the monies would eventually be passed on to Lyndhurst, the legal right to bring that claim is clearly the Director of Taxation. If you gave Lyndhurst the right to sue, which is what they're trying to claim here, the inherent right, it would render meaningless the provisions in the ordinance that give the specific duty and responsibility to the Director to administer, collect, and enforce the tax. And as Your Honors have already pointed out, when you look at the dichotomy between the Enabling Act for the first class cities versus the second class cities, it's very clear that they gave that right specifically to the cities in the Enabling Act for cities of the first class. Let me ask you this question. If you look at 4048.1, it provides that New Jersey municipalities with the power to enforce ordinances, to manage, regulate, and control the finances and property of the municipality. Does the tax that Lyndhurst attempted to impose under the Enabling Act constitute finances or property? Could it fall within the ambit of that? Well, I think there's two responses to that. First is the way the district court analyzes. I do think this deals with more of the police powers and the ability for Lyndhurst to manage its finances once it receives those finances. And this is not dealing with the ability to actually impose a tax and enforce a tax and actually determine what the tax should be on, which is what the Director has been given the authority to do. And secondly, I think you have to read this ordinance in conjunction with the Enabling Act for cities of the second class. And that Enabling Act is very clear as to what powers were given to Lyndhurst. They gave one power to the city of Lyndhurst, and that power was simply to enact a hotel occupancy tax. Then it specifically gave additional powers to administer, collect, and enforce, if necessary, the tax to the Director of Taxation. That's the clear statutory scheme here that we have, and I think you have to read this provision 4048.1 in conjunction with that. So Lyndhurst gets no direct benefit? Pardon? So Lyndhurst gets no benefit at all? No benefit in what respect? Well, I'm just trying to follow the money here. The money goes straight to Trenton, I guess, right? Right. So the hotels, who are the taxpayers, file their tax returns. They'll pay the money to Trenton, and then Trenton will then determine what share Lyndhurst or other second cities would have and distribute it to that. That is the structure that the legislature has enacted in this case. Okay. So Lyndhurst is saying that there should be more money available to it if the tax were administered in a different manner, and you're saying they're getting their share and we need not address whether it should be one method or the other. Well, I think that really gets to the heart of it, and I think what's very clear here is the authority, and I call that the administering of the tax, determining what the tax should be on, because that's the essence of the dispute here is whether or not. Do we have to resolve that? I don't think so, because I think the answer is the party who can resolve that question is clearly the director. And if you look at the Enabling Act, the Enabling Act gives the director the authority, all the powers that are due to the director under the state sales and use tax. That's incorporated into the Enabling Act for the cities of the second class. And then the sales and use tax give the general powers of the director. This is 5432B-24, Section 4, and that says to prescribe methods for determining the amount of receipt, amusement charges, or rent, and this is the important part, for determining which of them are taxable and which are non-taxable. And then we also cite the Cawa case, which is a New Jersey tax court case, which we think is very important on this, interpreting the same provision. And the Cawa case says as follows, I conclude that the division of taxation has exclusive jurisdiction in the first instance to determine whether a transaction is taxable or not taxable and determine the price in which that tax is calculated and determine the correct amount of that tax. And that is what Windhurst is trying to do by way of this lawsuit, is to insert itself in what the legislature has given the exclusive jurisdiction to the director to make that determination. And as we cite in our papers, the director, we think, has already made a determination on that, that our online travel services are not subject to the state tax. And I'd like to address, I think, the incentive issue. First of all, I think the incentive issue is somewhat irrelevant if there's a clear statutory scheme, which is what we have here. But secondly, I think the director of taxation has just as much of an incentive, if not more of an incentive, to try to go after the online travel companies if there really is being a shorting of taxing, which we disagree with. As Windhurst points out, there is a state hotel occupancy tax. I think it's 7%. And it mirrors the same language as the Windhurst ordinance. If Windhurst is correct in its arguments and there's really a shortfall in tax, which we strongly disagree with, then the director would have every incentive to try to go after us, to try to collect that tax on a statewide basis, as well as on behalf of the municipalities that it has been given the authority to under the Enabling Act. So I think it's very clear here that we have a very clear statutory scheme as to who has the legal right to bring this action, and that's the director. And that is the administration, collection, and enforcement, if necessary, of that tax. If you're correct, just you're saying that sounds like capacity. I'm sorry? If you are correct, just you're saying that. The question is who has the legal right. That sounds like Rule 17. Yeah, and Your Honor, in all honesty, I haven't analyzed that in detail. But I think you're right, but I think it also would deal with prudential standing because they are trying to assert the legal right of the director, who the state legislature clearly gave that to. But it almost sounds as if what you're asking us to do is to have a variation of prudential standing that says that we, as a matter of prudence, are not going to find standing in situations where there are disputes, in effect, between state and local governments. Well, I think it's a little bit different than that. It's when the state legislature has clearly said who has the right to do something. I don't think a court should step in and second-guess that decision when it's very clear as to who has that right. And I think the state legislative scheme in this case is very clear on that, as to who should have it. And it shouldn't be second-guessed as to whether or not there should be even a dispute in this case because I think there shouldn't be a dispute because it's very clear as to who has that right in this case. Are you aware of any other cases that are out there in New Jersey that a state court might be deciding this issue? No, I'm not aware of any other cases in New Jersey. And I think just to address the issues of there are about 40 cases nationwide in dealing with this. I don't think I've seen a case where there is the same legislative scheme that we have here. I think this is quite unique. Of those 40 cases, how many are in state court and how many in federal court? I would say probably the majority of them are in federal court. There are a few in the state court cases in which one of the arguments we raise in this case is the exhaustion of administrative remedies. A lot of, like the Anaheim case, the court in California said that these municipalities needed to exhaust their administrative remedies. So they went through an administrative process and then there was an appeal, if you will, to the state courts after those administrative processes and that's what took place. And since you have a couple of seconds to go, what is your position as to the letter? Your adversary points out ex parte in the sense that I guess it was prompted by somebody on your side. What is your position as to should this be given any weight? Does it need to be given any weight? Well, I don't think it needs to be given any weight. I think it's clearly the director's call, as I talked about, is to determine what is taxable and I think what it is informative is not dispositive of this issue, but it's really informative of the director has considered this issue, has looked at this issue, and has made a determination as to what it thinks it is. If Lindhurst really disagrees with the position the director has taken, its position is not to sue in federal court to try to overcome that decision. It's to lobby the director to try to get the director to say, listen, you're relying on this. We think this is wrong. We think it was actually correct. But if they do think it was wrong in any respect, their remedy is really with the director and their whole fairness argument about how this is unfair, we can't sue for our own taxes, I think that, too, is an argument that should be to the legislature, not a court. If they really don't think that they should have the ability to sue to collect their own taxes and administer their own taxes and hire a staff to be able to do all these things, if they really want that, their plea is with the state legislature, not with this court. Thank you, Your Honor. Thank you very much. Mr. Psaki. Thank you, Judge. Judge, I don't have the rules of federal procedure in front of me, so I'm going to default to what I would do with the district court. I would like to make a motion to brief the Rule 17 issue that Your Honor raised. Fine. Actually, you can submit simultaneous briefs. What's today? Thursday. I would say how many pages do you think you'll need? You want to say ten? No more? Ten double-spaced? Ten double-spaced. By a week from tomorrow? A week from tomorrow. Thank you, Judge. I mean, obviously, this is a – By 4 o'clock. 4 o'clock. Obviously, it's a critical issue, not just for the township of Lyndhurst, but for many municipalities across the state of New Jersey, so I appreciate Your Honor granting that application. I want to see if I can make sure that this is clear in my presentation. The liability of these defendants for the unpaid taxes has never been adjudicated. That's the substantive issue. And the heart of the factual liability question, we never got to in the district court, and that's what we will be getting to in Monroe County. And it's very simple. They charge a customer. We don't need to resolve it. Okay. So you do not need to resolve it, but the monies that would be derived from the additional revenue are not the state's. They have no percentage of it.  They're personally liable to Lyndhurst and the other municipalities for these monies. Respectfully, Judge Linares inverted the question. It's not whether Lyndhurst was given the power. I would urge Your Honor to look at Hague, and Your Honor cited Judge Greenaway, 40, 48-1. That is not a police power. It's captioned general powers. 40, 48-2 is the police power. Unequivocally, if this has meaning, if these words have meaning, Lyndhurst has the right to go get its property. It's a property that they owe Lyndhurst. So Lyndhurst has that right to collect a property. Again, I would go also to Hague. Your Honors are well. Isn't Hague, you're quoting Hague for the proposition that property is the equivalent of tax? I'm quoting Hague for the proposition that in order to divest the municipality of its common law rights to sue, which Hague says do not have to be explicitly granted to the municipality, it's inherent in the New Jersey Constitution to sue and collect debts. The legislature had to say that. And I'm not thinking I'm getting at least my view of the first class statute, which is first class, it's a limitation. They didn't limit Lyndhurst and say you can't sue to collect this debt. Also, the argument that we're going to interfere with the administration here is not really the way it works. It's one tax return. The director makes and he makes no decisions. It's just a calculation of how much money is derived from the taxes in Lyndhurst, Caldwell. Mr. Checkey, you can't argue that 4048-1 supports you unless you are going to also give us some support somewhere for the notion that tax and property are synonymous. I think that the money that they owe, it's a personal liability. Money is property. I get that. That can be argued from any number of sources. But tax and property. My view of the tax is it's a tax on the transaction. It results in a monetary obligation from them to me. That's a monetary debt involving the finances of the municipality. So that's why I think respectfully 48-1 does apply. And the legislative history here says these monies go right for general purposes. There's no restrictions on what I can do with this money. It's my money that they owe Lyndhurst. So that's why I do think 40-48-1 does apply. And clearly it's not a police power. That's two. So I think the district court got that wrong. I don't know that we need to find it a police power to draw the dichotomy between enforced and the absence of enforced and property and tax, do we? I don't think you do. I know you want us to look at, what is it, 48-2 is where Judge Linares went to. But we don't need to go there. I think that you're right, Judge. You don't need to go there. Where I think I sense we're parting company is that 1, 48-1, does not give the municipality to enforce an ordinance relating to the collection of tax. That ordinance, enabling act in the ordinance, create a monetary debt. If I'm right, and obviously I know they disagree, I verily believe I'm right, they owe me millions of dollars. They owe municipalities all across the state millions of dollars. That's a debt that they owe me. That's way down the line because someone would have to agree that there's the wholesale retail dichotomy. Correct. In order to your benefit. That's correct, and that's the ultimate dispute. That's what these cases ultimately get to. Some will go one way or the other. So, again, I appreciate, Judge, the opportunity to brief the issue. And we'll have it in. Thank you. Thank you to both counsel. The briefing, again, if you're going to submit anything, should be submitted simultaneously by no later than 4 p.m. on Friday, June 18. I thank both of you for very well presented arguments. Thank you. We'll take the matter under advisement.